# In the United States Court of Federal Claims

No. 21-549
(Filed Under Seal: May 16, 2024)
(Reissued: May 31, 2024)[1]

```
*************************************
JARED TRINNAMAN,                      *
                                      *
              Petitioner,             *
                                      *
    v.                                *
                                      *
SECRETARY OF HEALTH AND HUMAN         *
SERVICES,                             *
                                      *
              Respondent.             *
*************************************
```

*Laura Levenberg*, Muller Brazil, Dresher, PA, counsel for Petitioner.

*Eleanor A. Hanson*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Respondent.

## OPINION AND ORDER

**DIETZ, Judge.**

      Petitioner Jared Trinnaman ("Trinnaman") seeks review of Chief Special Master ("CSM") Brian Corcoran's decision denying him compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 *et seq*. ("the Act"). Trinnaman alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza ("flu") vaccine received on September 23, 2019. He sought compensation on January 11, 2021. The CSM dismissed his petititon for compensation, concluding that he failed to meet the statutory severity requirement set forth in Section 11(c)(1)(D)(i) of the Act. Trinnaman contends that the CSM erred by making arbitrary and capricious findings of fact. Because Trinnaman has not demonstrated that the CSM's decision was arbitrary or capricious, the Court **DENIES** Trinnaman's motion for review and **SUSTAINS** the CSM's decision.

---

[1] Pursuant to Vaccine Rule 18(b) of the Rules of the United States Court of Federal Claims, the Court issued this Opinion and Order under seal on May 16, 2024, and provided the parties fourteen days to propose redactions. *See* [ECF 40]. The parties did not propose any redactions. Accordingly, the Court reissues this Opinion and Order without redactions.

I.  **BACKGROUND**[2]

Trinnaman "received the flu vaccine in his right deltoid at his primary care provider's ('PCP') office on September 23, 2019."[3] *Trinnaman*, 2023 WL 9477264, at *1. On October 8, 2019, during a telephone appointment with his PCP, Trinnaman complained of right shoulder pain following the vaccine. *Id.* He further stated that although "he had tried ice and rest, . . . he did not want to try medication for pain/inflammation, . . . ." *Id.* (internal quotation marks omitted). He asked to schedule an in-person examination. *Id.*

On October 9, 2019, Trinnaman had an in-person visit with his PCP. *Trinnaman*, 2023 WL 9477264, at *1. At the appointment, Trinnaman stated that he had experienced pain since receiving the vaccine and had "an inability to move his arm." *Id.* (internal quotation marks omitted). Upon examination, Trinnaman's PCP found that "he had full passive range of motion without pain, but [that he] reported pain with active range of motion." *Id.* Triannaman's PCP offered him physical therapy. *Id.* During a telephone call with his PCP later that day, Trinnaman "reported receiving the vaccination high in the right shoulder and [stated] that the pain was dull aching to sharp at 8/10 if lifting." *Id.* (internal quotation marks omitted). Also, during the conversation, Trinnaman "insisted on x ray and seeing orthopedics, but declined an orthopedic appointment the following day due to travel." *Id.* (internal quotation marks omitted) (alteration to original). He requested an orthopedic appointment on October 15, 2019. *Id.* On October 10, 2019, Trinnaman was x-rayed; the results were normal. *Id.*

During Trinnaman's in-person appointment with an orthopedist on October 15, 2019, he stated that his "shoulder pain and stiffness . . . was slowly getting better." *Trinnaman*, 2023 WL 9477264, at *1 (internal quotation marks omitted). The orthopedist diagnosed Trinnaman with adhesive capsulitis, recommended online phyiscal therapy, and suggested that he treat the pain with ibuprofen instead of a narcotic medication. *Id.* The doctor further stated that he believed the issue would "resolve on its own with more time." *Id.* (internal quotation marks omitted).

On October 30, 2019, Trinnaman had an in-person visit with his PCP for "skin and toenail complaints." *Trinnaman*, 2023 WL 9477264, at *2. The doctor did not examine Trinnaman's shoulder during that visit but did refill his prescription for pain medication for his right shoulder pain—acetaminophen with codeine. *Id.* Approximately five months later, on March 10, 2020, Trinnaman again visited his PCP in person "for a right finger infection." *Id.* Trinnaman did not raise the issue of his shoulder during that visit. *Id.*

Trinnaman's next appointment with his orthopedist was by telephone on May 26, 2020, during which Trinnaman "stated that he continued to have pain with lifting and overhead motion." *Trinnaman*, 2023 WL 9477264, at *2. No examination was performed during this appointment, and the doctor "speculated that [Trinnaman's] symptoms could be rotator cuff tendinitis or lingering pain from adhesive capsulitis." *Id.* The orthopedist recommended an in-person evaluation but did not believe that an MRI was necessary. *Id.*

---

[2] The factual background is derived from the CSM's decision. *See Trinnaman v. Sec'y of Health & Hum. Servs.*, 2023 WL 9477264 (Fed. Cl. Dec. 11, 2023).

[3] Trinnaman was thirty-six years old when he received the vaccine. *Trinnaman*, 2023 WL 9477264, at *1.

On September 5, 2020, Trinnaman had a video appointment with his PCP for "rash, foot pain, and skin and nail issues." *Trinnaman*, 2023 WL 9477264, at *2. Although the doctor did not examine Trinnaman's shoulder during that appointment, he noted in Trinnaman's medical history that he had a "frozen shoulder resulting from a flu shot." *Id.* (internal quotation marks omitted). Further, the record from that visit indicated that Trinnaman did not want to be treated with anti-inflammatories or cortisone injections for his right shoulder pain. *Id.* Trinnamen's PCP ordered blood work and x-rays at that time; Trinnaman's bloodwork showed that his rheumatoid factor was "slightly elevated." *Id.*

Trinnaman next saw his PCP for right shoulder pain on October 29, 2020.[4] *Trinnaman*, 2023 WL 9477264, at *2. During that visit—a video appointment—Trinnaman complained of continued pain in his right shoulder. *Id.* He further stated that he was exercising but that he found overhead movement painful. *Id.* The doctor noted that he "does appear to have full range of motion of shoulders." *Id.* (internal quotation marks omitted). The doctor recommended that Trinnaman "continue exercises to maintain range of motion" and suggested "a cortisone injection if there was no improvement." *Id.* The last time Trinnaman saw his PCP was by video appointment on December 16, 2020. *Id.* This appointment, however, was not for issues related to his right shoulder, and there are no further references thereto in his medical records. *Id.*

Trinnaman sought compensation under the Act on January 11, 2021. Pet. [ECF 1]. He alleged that he suffered "a Table Injury of SIRVA, resulting from the influenza vaccination received on September 23, 2019." *Id.* at 1.[5] Based on a fully-briefed motion for a factual ruling on the record, [ECFs 27, 28, 31], the CSM found that Trinnaman did not meet the Act's statutory severity requirement because he failed to demonstrate that he "suffered the residual effects of his vaccine-related injury for the six months required by the Act." *Trinnaman*, 2023 WL 9477264, at *5. Therefore, on December 11, 2023, the CSM dismissed Trinnaman's claim. *Id.* Trinnaman sought review of the CSM's decision on January 9, 2024. Pet.'s Mem. in Supp. of Mot. for Review [ECF 34]. The government responded on February 6, 2024. Resp. [ECF 38]. The Court held oral argument on May 9, 2024.

## II. STANDARD OF REVIEW

This Court has jurisdiction under the Act to review a special master's decision. 42 U.S.C. § 300aa-12(e)(2). In reviewing a special master's decision, this Court may:

> (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision, (B) set aside any of the findings of fact or conclusions of law of the special master found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and

---

[4] The CSM erroneously stated that Trinnaman's October 2020 visit occurred on the thirtieth of the month. In the upper right hand corner of the record from that visit, it states: "Visit date: 10/29/2020." *See, e.g.*, [ECF 8-3] at 250.

[5] All page numbers in the petition for compensation, the medical records, and the parties' briefings refer to the page numbers generated by the CM/ECF system.

3

> conclusions of law, or (C) remand the petition to the special master
> for further action in accordance with the court's direction.

42 U.S.C. §§ 300aa-12(e)(2)(A)-(C).

This Court reviews a special master's findings of fact under the "arbitrary and capricious" standard, legal questions under the "not in accordance with law" standard, and discretionary rulings under the "abuse of discretion" standard. *Turner v. Sec'y of Health & Hum. Servs.*, 268 F.3d 1334, 1337 (Fed. Cir. 2001). With respect to the arbitrary and capricious standard, "no uniform definition . . . has emerged," but it is "a highly deferential standard of review" such that "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1527-28 (Fed. Cir. 1991); *accord Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (a decision is arbitrary and capricious only if it is "so implausible that it could not be ascribed to a difference of view"). The arbitrary and capricious standard of review is difficult for an appellant to satisfy with respect to any issue, but particularly with respect to an issue that turns on the weighing of evidence by the trier of fact. *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000). "[I]t is not . . . the role of this court to reweigh the factual evidence, [] to assess whether the special master correctly evaluated the evidence[, or to] . . . examine the probative value of the evidence or the credibility of the witnesses." *Munn v. Sec' of Dep't of Health & Hum. Servs.*, 970 F.2d 863, 871 (Fed. Cir. 1992), *quoted in Lampe*, 219 F.3d at 1360. "These are all matters within the purview of the fact finder." *Id.*

The "not in accordance with law" standard, on the other hand, is applied without deference to legal determinations, such as "[w]hether the special master applied the appropriate standard of causation . . . ." *Deribeaux v. Sec'y of Health & Hum. Servs.*, 717 F.3d 1363, 1366 (Fed. Cir. 2013). Lastly, the abuse of discretion standard applies to the special master's evidentiary rulings, such as determinations regarding the qualification of experts and the admissibility of their testimony. *Piscopo v. Sec'y of Health & Hum. Servs.*, 66 Fed. Cl. 49, 53 (2005) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). "The [abuse of discretion standard] will rarely come into play except where the special master excludes evidence." *Munn*, 970 F.2d at 870 n.10; *accord Caves v. Sec'y of Health & Hum. Servs.*, 100 Fed. Cl. 119, 131 (2011), *aff'd*, 463 F. App'x 932 (Fed. Cir. 2012).

The Federal Circuit has made clear that special masters, as the finders of fact, have the responsibility to weigh the persuasiveness and reliability of evidence presented to them, and if appropriate, the credibility of testimony. *Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1325 (Fed. Cir. 2010); *see Terran v. Sec'y of Health & Hum. Servs.*, 195 F.3d 1302, 1316 (Fed. Cir. 1999) ("[T]he rules of evidence require that the trial judge determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline.") (internal quotation marks omitted). The special master has broad discretion in determining the credibility of witnesses and weighing the evidence, and these credibility determinations are "virtually unreviewable" by the reviewing court. *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993). In other words, the reviewing court does not reweigh the

evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses because all of these matters are within the purview of the factfinder. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1349 (Fed. Cir. 2010) (citing *Munn*, 970 F.2d at 871); *accord Loyd, Next Friend of C.L. v. Sec'y of Health & Hum. Servs.*, No. 2022-1371, 2023 WL 1878572, at *2 (Fed. Cir. Feb. 10, 2023).

### III.  LEGAL STANDARDS

The Act was established to compensate individuals for a vaccine-related injury or death after a showing that the vaccine caused that injury or death. 42 U.S.C. § 300aa-11(a)(5)(B)(10). The Act provides two ways for a petitioner to establish causation. *Munn*, 970 F.2d at 865. First, a petitioner may demonstrate causation through a statutorily prescribed presumption by showing that the alleged injury meets the criteria listed on the Vaccine Injury Table ("Table"). 42 U.S.C. § 300aa-14. The Table identifies the covered vaccines, the corresponding injuries, and the time period after vaccination in which the particular injuries must occur. 42 C.F.R. § 100.3 "[I]f a petitioner can establish that [he] received a listed vaccine and experienced such symptoms or injuries within the specified timeframes, [he] has met [his] prima facie burden to prove that the vaccine caused [his] injuries." *de Bazan v. Sec'y of Health & Hum. Servs.*, 539 F.3d 1347, 1351 (Fed. Cir. 2008). Alternatively, if a petitioner suffered an injury listed on the Table but not within the specified time period or if a petitioner suffered an "off-Table injury," he must prove "causation-in-fact" by a preponderance of the evidence.[6] *See* 42 U.S.C. § 300aa-11(c)(1)(C)(ii); *see also Broekelschen*, 618 F.3d at 1341-42.

Under the Table, a petitioner is considered to have suffered a SIRVA if he meets the following criteria:

> (i)   No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii)  Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv)  No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

---

[6] "This court has interpreted the 'preponderance of the evidence' standard referred to in the Vaccine Act as one of proof by a simple preponderance, of 'more probable than not' causation." *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1279 (Fed. Cir. 2005) (citing *Hellebrand v. Sec'y of Health & Hum. Servs.*, 999 F.2d 1565, 1572-73 (Fed. Cir. 1993)).

42 C.F.R. 100.3(c)(10)(i)-(iv). In addition to satisfying the causation requirement, the petitioner must also satisfy the statutory severity requirement, which mandates that the petitioner demonstrate that he:

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury, or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention, . . . .

42 U.S.C.A. § 300aa-11(c)(1)(D)(i)-(iii). A petitioner must satisfy the requirements by a preponderance of evidence. 42 U.S.C. § 300aa-13(a)(1). Further, the special master or court may not find that a petitioner satifies the requirements based solely on the petitioner's claims, unsubstantiated by medical records or opinion. *Id*.

## IV.    ANALYSIS

In the instant case, the CSM dismissed Trinnaman's claim, finding that he failed to demonstrate that he "suffered the residual effects of his vaccine-related injury for the six months" mandated by the Act's severity requirement. *Trinnaman*, 2023 WL 9477264, at *5. Trinnaman challenges the CSM's decision, arguing that his factual findings were arbitrary and capricious because he disregarded medical record evidence and testimony showing that the SIRVA symptoms continued beyond six months after vaccination. [ECF 34] at 8. The government maintains that the CSM did not commit reversible error and that his conclusions were appropriately based on Trinnaman's medical records, his statements, and his travel records. [ECF 38] at 13-14. For the reasons stated below, the Court concludes that the CSM considered the relevant medical records and testimony, drew plausible inferences, and articulated a rational basis for his decision.

Trinnaman argues that the CSM "erroneously disregarded relevant and contemporaneous recorded facts in the medical records that document [his] SIRVA symptoms lasting longer than six months." [ECF 34] at 8. In support of this contention, Trinnaman points to notes made by his doctors following appointments in May, September, and October of 2020. *Id*. In Trinnaman's view, the notes are significant because they reflect that during his May and September 2020 visits, he attributed the pain in his shoulder to having received a flu shot. *Id*. (citing [ECF 8-3] at 197 (Dr. Anthony Lee Yu's Notes from Trinnaman's 5/26/2020 appointment); *id*. at 213 (Dr. Victor Richard Fernandez's Notes from Trinnaman's 9/5/2020 appointment). According to Trinnaman, these records demonstrate that the residual effects of his SIRVA "lasted longer than both his initial course of treament in October of 2019 and his May 26, 2020 appointment with his orthopedist." [ECF 34] at 8-9. Next, Trinnaman contends that the CSM erroneously analyzed the evidence regarding the severity of his SIRVA by neglecting to note that when Trinnaman visited his doctor on March 10, 2020, for a right finger infection, he was also suffering from shoulder pain. *Id*. at 9. Trinnaman avers: "The Vaccine Act does not require that a petitioner suffer consistent symptoms throughout the six-month period post-vaccination, but instead only that a

petitioner suffer the residual effects or complications of the alleged injury for more than six months after administration of the vaccine." *Id.* at 10. Thus, Trinnaman argues that "[t]he overall record in this case shows [that he] suffered *at least* pain in his left shoulder range of motion until as late as October 2020, more than one (1) year post-vaccination." *Id.* (emphasis in original).

Trinnaman further argues that the CSM "erroneously disregarded relevant and contemporaneous testimony from [him] that document [his] SIRVA symptoms lasting longer than six months" and show that "a six-month gap in treatment [] was indisputably caused by the prognosis given to him by his doctors combined with his work schedule." [ECF 34] at 10. To support this argument, Trinnaman points to his February 21, 2023, declaration. *Id*. at 10-11. Therein, Trinnaman explains that the gap in his treatment was primarily due to his work schedule and the diagnosis of his injury. [ECF 26-2] at 1. With respect to his work schedule, he states the following:

> I am an independent contractor that travels all over the country for work. I am typically only home one day a week, making it very hard to go to the doctor. Also, I can not [sic] take time off to make that possible, as then I will not be paid for the week. I simply do not have time to keep going back to the doctor to simply be told they can't do anything more to help me.

*Id.* Trinnaman included copies of emails and other materials documenting his work travel. *See* [ECF 30-2]. Trinnaman also explains in his declaration that the "diagnosis that they could not do much other than physical therapy or a hydrocortisone shot (which I'm told would be bad in the long term) for my shoulder" also contributed to the gap in his treatment. [ECF 26-2] at 1. Describing his condition, Trinnaman states that he is "still dealing with the painful shoulder and [an] inability to perform certain tasks at work, due to [his] shoulder, on a daily basis." *Id.*

The Court finds that Trinnaman has not demonstrated that the CSM's consideration of either his medical records or his testimony was arbitrary or capricious. In the factual background section of his decision, the CSM discussed Trinnaman's May, September, and October 2020 appointments. *Trinnaman*, 2023 WL 9477264, at *2. Regarding the May 26, 2020, appointment, the CSM noted that it was a telephone appointment with Trinnaman's orthopedist and that Trinnaman complained of continued pain associated with "lifting and overhead motion." *Id.* The CSM further noted that "[n]o examination was performed" and that "[t]he doctor speculated that [his] symptoms could be rotator cuff tendinitis or lingering pain from adhesive capsulitis [(a diagnosis related to his shoulder)], and recommended an in-person evaluation." *Id.* Regarding the September 5, 2020, appointment, the CSM noted that it was a video appointment with Trinnaman's PCP for "a rash, foot pain, and skin and nail issues." *Id.* The CSM continued, stating that Trinnaman's "medical history referenced 'frozen shoulder resulting from a flu shot,'" that no examination was performed, and that Trinnaman "wanted to avoid anti-inflammatories, including cortisone injections, for his right shoulder pain." *Id.* Regarding the October 29, 2020, appointment, the CSM noted that it was a video appointment for "continued right shoulder pain," and that Trinnaman "stated he was 'doing some exercises . . . but continues with some pain,' particularly with overhead movement." *Id.* (quoting [ECF 8-3] at 250). The CSM further noted that Trinnaman's medical record stated that he "appear[ed] to have full range of motion of

shoulders," *id.* (quoting [ECF 8-3] at 251) (internal quotation marks omitted), and that "[t]he doctor recommended that he continue exercises to maintain range of motion, and possibly, a cortisone injection if there was no improvement," *id*. (citing [ECF 8-3] at 251).

In his analysis, which follows his recitation of the facts, the CSM explained why he concluded that the residual symptoms of Trinnaman's SIRVA did not continue until March 23, 2020—six months after he received the vaccine. *Trinnaman*, 2023 WL 9477264, at *3. Citing Trinnaman's medical records, the CSM noted that Trinnaman only sought sporadic treatment for his injury: "The medical records, [], reveal sporadic rather than 'regular,' treatment, with gaps of seven months,[7] and then three months,[8] between appointments." *Id.* According to the CSM, "[t]he gap between initial presentation (which established some SIRVA elements) and Petitioner's March 2020 treatment is especially damaging to a finding of severity." *Id.* In reaching this conclusion, the CSM considered Trinnaman's supplemental declaration, wherein Trinnaman explains that because he is obliged to "travel all over the country," for work, he is "typically home once a week," and "unable to take any paid time off to visit the doctor." *Trinnaman*, 2023 WL 9477264, at *4 (quoting [ECF 26-2] at 1) (internal quotation marks omitted). In the CSM's view, Trinnaman's travel records demonstrated that Trinnaman's work schedule did not hinder his ability to seek medical care because he was able to make his appointments between his work trips. *Id.* In support of his conclusion, the CSM cited multiple doctors' appointments scheduled by Trinnaman on travel days and days in between travel days: "This record thus establishes that Petitioner found opportunities *around* his travel to seek treatment for his shoulder pain, and could have continued to do so close in time to his vaccination had it been necessary." *Id.* (emphasis in original).

The CSM also specifically considered Trinnaman's doctor visit on March 10, 2020, for a right finger infection, which occurred "very close to six months after his vaccination." *Trinnaman*, 2023 WL 9477264, at *4. The CSM concluded that Trinnaman's effort to seek medical care for a finger infection between travel suggests that he would have sought care for shoulder pain had it still existed. *Id*. The CSM acknowledged that the relevant medical record notes "adhesive capsulitis" as an active problem but still concludes that the record does not show that Trinnaman identified shoulder pain as a reason for this visit. *Id*. The CSM determined that "[t]he record overall supports the conclusion that [Trinnaman] was not one to avoid medical treatment when he felt it necessary . . . [and] that he would have continued to seek treatment during the gap in treatment if he was still experiencing sequelae" from his vaccination. *Id*.

Lastly, the CSM considered Trinnaman's medical appointments on May 26, 2020, September 5, 2020, and October 29, 2020 and concluded—based on his review of the medical records—that although Trinnaman "sought medical care for right shoulder pain on a few occasions outside of or beyond the six-month period . . . these instances d[id] not provide preponderant evidence that his symptoms *at that time* were a continuation of his previous shoulder pain, and therefore caused by his vaccination." *Trinnaman*, 2023 WL 9477264, at *4

---

[7] Seven months lapsed between Trinnaman's October 30, 2019, appointment and his May 26, 2020, appointment. *Trinnaman*, 2023 WL 9477264, at *3.

[8] Approximately three months lapsed between Trinnaman's May 26, 2020, appointment and his September 5, 2020, appointment. *Trinnaman*, 2023 WL 9477264, at *3.

(emphasis in original). In reaching this conclusion, the CSM revisited the medical records for each appointment and explained that, due to the lack of a physical examination of Trinnaman's shoulder and the speculation in the medical records by Trinnaman's doctors that the shoulder pain at the time of these appointments could have alternative causes, "[t]here is simply insufficient evidence of continuous symptoms from vaccination through at least March 23, 2020." *Id*. at *5. In sum, the CSM's determination that Trinnaman failed to demonstrate that he suffered the residual effects of his vaccine-related injury for six months as required by the Act was based upon his consideration of the relevant evidence and his plausible inferences drawn therefrom. *See Hines*, 940 F.2d at 1527-28. It is not the Court's role to reweigh the evidence or to assess whether the CSM correctly evaluated the evidence. *Broekelschen*, 618 F.3d at 1349.

With respect to the medical appointments that took place on May 26, 2020, September 5, 2020, and October 29, 2020, Trinnaman argues that the CSM "improperly disregarded specific, contemporaneously-quoted details in [his] medical records [that describe] continuing SIRVA symptoms more than six months after his vaccination." [ECF 34] at 8. While Trinnaman is correct that the CSM's decision does not recite each portion of the medical records that reference his shoulder pain after his flu shot, this does not necessarily mean that the CSM disregarded the medical records or that his conclusions were arbitrary or capricious. To the contrary, the CSM expressly acknowledged in his decision that Trinnaman "sought medical care for right shoulder pain" beyond the six-month period. *Trinnaman*, 2023 WL 9477264, at *4. Thus, while the decision does not explicitly recite all pertinent portions of the medical records, the CSM clearly reviewed the medical records and understood that these appointments related to shoulder pain. Further, the CSM acknowledged that "[i]n many cases, efforts to treat shoulder pain complaints just beyond the severity timeframe allow the conclusion that the claimant was still experiencing pain, even if he or she did not consistently seek treatment in the initial six months from onset." *Id*. Thus, the CSM recognized that Trinnaman need not have suffered consistent symptoms throughout the six-month period post-vaccination to satisfy the statutory severity requirement. The Court cannot say that the CSM's conclusion—that Trinnaman's shoulder pain at the time of these appointments was not a residual effect of his vaccination—is so implausible as to be arbitrary or capricious. *See Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43 (a decision is arbitrary and capricious only if it is "so implausible that it could not be ascribed to a difference of view").

Citing to the United States Court of Appeals for the Federal Circuit's reasoning in *Kirby v. Secretary of Health and Human Services*, 997 F.3d 1378 (Fed. Cir. 2021), Trinnaman also argues that the CSM improperly inferred that Trinnaman was not suffering shoulder pain when he visited his PCP on March 10, 2020, for a right finger infection because the medical record from that appointment does not mention shoulder pain. *See* [ECF 34] at 8. However, Trinnaman's reliance on *Kirby* is misplaced. In *Kirby*, the United States Court of Federal Claims ("CFC") reversed the Special Master's ruling, holding that because the petitioner's medical records were "silent about her vaccine injury and indicate[d] she was 'feeling fine,' [during the six months following her vaccination,] they undermine[d] her testimony that she continued to experience symptoms during this period." 997 F.3d at 1382. The Federal Circuit then reversed the CFC's ruling, holding that the Special Master's conclusion that petitioner's vaccine injury lasted more than six months was based on plausible evidence that included petitioner's "lay testimony, corroborating documentation, and expert testimony." *Id.* at 1381. The Federal Circuit

9

found that the CFC erroneously presumed that Kirby's medical records were accurate and complete: "The Claims Court reasoned that because Ms. Kirby's medical records from January 2014 through July 2015 are silent about her vaccine injury and indicate she was 'feeling fine,' they undermine her testimony that she continued to experience symptoms during this period." *Id.* at 1382. The Federal Circuit explained:

> We reject as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions. Although a patient has a "strong motivation to be truthful" when speaking to his physician, *see* Fed. R. Evid. 803 advisory committee's note to 1975 enactment, that does not mean he will report every ailment he is experiencing, or that the physician will accurately record everything he observes. A patient having a heart attack is not likely to mention his runny nose, nor is his physician likely to record it. As the Claims Court has recognized, physicians may enter information incorrectly and "typically record only a fraction of all that occurs." *Shapiro v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 532, 538 (2011) (citing *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991)). We see no basis for presuming that medical records are accurate and complete even as to all physical conditions.

*Id.* at 1383. Significantly, the Federal Circuit did not conclude that when a petitioner's medical records are silent as to his condition, the petitioner's testimony should necessarily be credited or given more weight. Rather, the court held that "*[b]ecause a reasonable fact finder could conclude* that Ms. Kirby's testimony is not inconsistent with her medical records from January 2014 through July 2015, it was not arbitrary and capricious for the special master to credit that testimony in finding that Ms. Kirby's vaccine injury lasted more than six months." *Id.* at 1384 (emphasis added). In other words, the court found that because it was neither arbitrary nor capricious for the fact finder—the Special Master—to conclude that the medical records did not paint the entire picture and that the petitioner's testimony was credible, the Special Master's ruling should be upheld. Here, there is no indication that the CSM presumed that the March 10, 2020, medical record was accurate and complete and thereby excluded the possibility that Trinnaman was still experiencing shoulder pain. Instead, the CSM analyzed the medical record and determined that, despite its reference to adhesive capsulitis as an active problem, the appointment was for a right finger infection, not continued treatment for shoulder pain. *See Trinnaman*, 2023 WL 9477264, at *4. The CSM then concluded that the March 10, 2020, record "supports the conclusion that [Trinnaman] was not one to avoid medical treatment when he felt it necessary – thereby supporting the conclusion that he would have continued to seek treatment during the gap in treatment if he was still experiencing sequelae." *Id*. This is a plausible inference drawn from the medical record—an inference that is not precluded by the Federal Circuit's holding in *Kirby*. The Court finds that the CSM's consideration of the evidence (Trinnaman's medical records, Trinnaman's documentation of his work travel, and Trinnaman's declaration), the CSM's conclusion that Trinnaman's SIRVA did not meet the Act's statutory severity requirement, and the CSM's explanation of the reasoning behind his conclusion were all

rational.[9] *See Kirby*, 997 F.3d at 1381-82 (stating that the evidence, "considered in light of the record as a whole" is sufficient for the special master's finding to stand, when that finding is based on plausible evidence). The Court will not second guess the CSM's evaluation of the evidence. *See Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (expressing that the Act "makes clear" that the reviewing court's purpose "is not to second guess the Special Master[']s fact-intensive conclusions").

## V.   CONCLUSION

Trinnaman has not demonstrated that the CSM's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Therefore, Trinnaman's motion for review of the CSM's decision [ECF 33] is **DENIED**, and the CSM's entitlement decision of December 11, 2023, is **SUSTAINED**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz<br>
THOMPSON M. DIETZ, Judge

---

[9] Trinnaman also argues that the facts in his case are analogous to the facts in *Silvestri v. Secretary of Health and Human. Services*, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021), where the CSM found that the petitioner had satisfied the statutory severity burden. [ECF 43] at 12-13. While these cases are similar in some respects, the Court finds two distinguishing features. In *Silvestri*, the CSM found that the medical records demonstrated that the petititioner "consistently sought treatment for his left shoulder injury" in the five months immediately following his vaccination. *Silvestri*, 2021 WL 4205313, at *3. By comparison, in the instant case, the CSM found that Trinnaman's medical records post vaccination "reveal[ed] sporadic rather than 'regular[]' treatment, with gaps of seven months, and then three months, between appointments." *Trinnaman*, 2023 WL 9477264, at *3. Additionally, with respect to the gap in treatment, the CSM in *Silvestri* found that the petitioner "provided a credible explanation of why he did not seek additional care for his injury" after five months elapsed post vaccination and that a "number of facts better support Petitioner's position on severity." *Silvestri*, 2021 WL 4205313, at *3-4. In this case, the CSM found that Trinnaman's explanations for the gap in treatment are unsupported by the record. *Trinnaman*, 2023 WL 9477264, at *4 ("But a close review of the filed records does not support Petitioner's claims."). As the finder of fact, the special master is responsible for weighing the persuasiveness and reliability of the evidence, *Moberly*, 592 F.3d at 1325, and reversible error is difficult to demonstrate if the special master considered the relevant evidence, drew plausible inferences therefrom, and articulated a rational basis for the decision, *Lampe*, 219 F.3d at 1360.